# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CIT BANK, N.A.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 17-10767 C/W 18-1004** |
| **HOWARD TRANSPORTATION, INC. ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendants' Motion for Partial Summary Judgment (Doc. 36). For the following reasons, the Motion is GRANTED.

## BACKGROUND

This consolidated action arises out of two lease agreements for tractor trailer-trucks. In August 2004, Hibernia National Bank (later acquired by Plaintiff CIT Bank, N.A. ("CIT Bank")) entered into a lease with Defendant Howard Transportation, Inc. ("HT") of 50 Western Star tractor trucks (the "HT Lease"). Defendant Howard Industries, Inc. ("HI") guaranteed HT's indebtedness. Under the terms of the HT Lease, HT made 49 monthly lease

payments, and the agreement terminated on January 15, 2017. On January 13, 2017, HT returned all of the trucks to the lot designated in the HT Lease.[1]

In July 2014, Defendant Howard Dedicated Operations, Inc. ("HDO") entered into a lease agreement with Capital One Equipment Finance Corp. for the lease of 15 Western Star tractor trucks ("the HDO Lease"). That agreement was later assigned to Plaintiff CIT Bank. The HDO Lease called for 37 monthly payments and terminated on September 1, 2017. Prior to the end of the lease, HDO returned all of the trucks to the location designated in the HDO Lease.

Plaintiff alleges that upon return of the trucks, it identified a multitude of problems with their condition. Pending a resolution of the return condition dispute, Plaintiff took possession of 46 of the trucks in December 2017 and the remaining in February 2018. Plaintiff argues, however, that it has not accepted return of the trucks because they are not in the condition required by the Leases and need proper inspection, testing, and repair. Plaintiff's review of the condition of the trucks is ongoing, but it has identified $37,450.33 in repairs required on 41 of the trucks.

Plaintiff CIT Bank brings breach of contract claims against HT, HI, and HDO, arguing that they failed to return the trucks in the condition required by the HT and HDO Leases ("the Leases"). Plaintiff seeks the cost of necessary repairs. In addition, Plaintiff argues that the Leases entitle it to continued lease payments until such time as the trucks are returned in the condition specified therein.[2] In this Motion, HT, HI, and HDO (the "Defendants") move

---

[1] Two of the trucks leased by HT were previously determined to be a total loss, and HT paid Plaintiff the stipulated loss value of those trucks. They are not at issue here.

[2] In the consolidated matter, 18-1004, HDO seeks a declaration that the HDO Lease is terminated and no additional lease payments are owed. It also alleges that CIT breached

for a judgment dismissing Plaintiff's claims for lease payments accruing after the termination of the leases. Plaintiff opposes.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3]  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[5]  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[6]  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[7]  "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that

---

the lease agreement by failing to take delivery of the trucks and charging additional rental payments.

[3] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).

[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[5] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).

[6] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

[7] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[8] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[9] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[10]

## LAW AND ANALYSIS

Defendants move for dismissal of Plaintiff's claim for post-termination lease payments. They argue that the Leases do not require, as Plaintiff argues, that they continue to pay lease payments until the trucks are deemed to be in the condition required under the Leases. Defendants argue that Plaintiff's sole remedy under the Leases for the return of equipment in sub-standard condition is a claim for damages. This Motion therefore asks this Court to interpret an identical provision in the HT and HDO Leases. The relevant provision states that:

> Upon the expiration or termination of the lease term of each item of Equipment …, Lessee, at its own expense, will return such item of Equipment to Lessor to such location in the continental United States as Lessor may designate in writing, and in the condition required by this Section 6, and until each such item has been so returned, Lessee shall continue to pay Lessor, on each rent payment date during the Lease term of each such item, the rent for each full rental period for such item as specified in the Individual Leasing Record therefor. Each such item shall be

---

[8] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[9] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[10] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

returned in good operating condition with no damage thereto, normal wear and tear excepted, and at a minimum in the condition in which such item is required to be maintained pursuant to Section 6 hereof.

The parties each argue that this provision is clear and unambiguous, yet they disagree on its meaning. Defendants argue that this provision requires that lease payments be made only until the trucks are returned to the delivery location designated by Plaintiff. Plaintiff, on the other hand, argues that the provision states that Defendants must return the trucks in the condition required by Section 6 of the Leases and that monthly lease payments continue to be owed until they are returned in that condition. Put differently, it argues that Defendants' return of the trucks "in the condition required by the [Leases] is a condition precedent to the termination of [Defendants'] continued rental payment obligation."[11] Section 6 provides that the trucks be maintained in as "good order and condition as when delivered to Lessee hereunder, ordinary wear and tear from proper use thereof only excepted."[12]

---

[11] Doc. 37, p.5.

[12] Doc. 36-4. Plaintiff also argues that Defendants must continue to pay rental payments until the trucks are returned in a condition that satisfies both the repair requirements of Section 6 *and* those listed in the equipment and maintenance addendums to the Leases. Section 6 in no way incorporates such a requirement. Even under Plaintiff's interpretation of the Leases, neither the addendums nor Section 6 predicate the termination of lease payments on the return requirements listed in the equipment and maintenance addendums. Indeed, Section 6 expressly states that the trucks must be returned "in the condition required by this Section 6." The Equipment Addendum to the HT Lease merely provides requirements that must be met prior to return "*in addition to* paragraph 6 of the Lease." Doc. 36-4, p. 21. The Maintenance and Return Riders to the HT and HDO Leases likewise provide that the return requirements therein are "*in addition to* the return requirements set forth in the Lease." Doc. 7-1, p. 62. Neither addendum includes a provision requiring that lease payments be continued until the repair requirements are met.

The Leases provide that they shall be interpreted in accordance with Louisiana law. Under Louisiana law, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[13] "The determination of whether a contract is clear or ambiguous is a question of law."[14] "[W]hen the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties."[15]

This Court has considerable trouble deciphering the meaning of this provision and finds it far from clear and unambiguous. It is unclear whether the phrase "so returned" is intended to encompass the condition requirement. Even accepting Plaintiff's interpretation, however, this Court finds that such an interpretation would lead to absurd, inequitable results. "Louisiana courts will not interpret a contract in a way that leads to unreasonable consequences or inequitable or absurd results even when the words used in the contract are fairly explicit."[16] Indeed, "a contract provision is not ambiguous where only one of two competing interpretations is reasonable."[17]

Plaintiff's interpretation, in which Defendant is liable for lease payments until the trucks are returned in the condition set forth in the Leases, allows Plaintiff to unilaterally extend Defendants' obligation to pay lease payments

---

[13] LA. CIV. CODE art. 2046.

[14] Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 579 (La. 2003).

[15] Dixie Campers, Inc. v. Vesely Co., 398 So. 2d 1087, 1089 (La. 1981).

[16] Texas E. Transmission Corp. v. Amerada Hess Corp., 145 F.3d 737, 742 (5th Cir. 1998).

[17] *Id.* at 741.

in perpetuity, pending its determination of the condition of the trucks. Such an interpretation would render the termination dates of the Leases meaningless. Indeed, despite Defendants' delivery of the trucks to the location designated in the Leases immediately prior to termination of the Leases, Plaintiff refused to accept return of the trucks until it had inspected them and determined that they met the condition standards of the Leases.[18] It took Plaintiff 22 months after the HT Lease terminated and 14 months after the HDO Lease terminated to make this determination on 41 of the 63 trucks. Plaintiff believes that Defendants are liable for lease payments during that time and that they continue to be liable for lease payments on the remaining 22 trucks for which a determination has not yet been reached. Plaintiff's request for additional lease payments amounts to $1.5 million and counting, while the cost of the repairs it has identified is $37,450.33. This result is inequitable at best.

In *Texas Eastern Transmission Corp. v. Amerada Hess Corp.*, the Fifth Circuit held that the contract interpretation suggested by the defendant led to absurd consequences when it would have allowed the defendant a windfall and bound the plaintiff to pay for a "virtually unlimited quantity of gas."[19] Here too, Plaintiff's interpretation entitles it to a windfall in that it would require Defendants to continue to pay lease payments even after they had returned

---

[18] Further, even if "so returned" encompassed the condition requirement of Section 6, there is no provision giving Plaintiff the sole authority to determine whether the condition of the trucks meets this subjective standard, as Plaintiff suggests. This Court finds particularly troubling Plaintiff's rejection of HDO's attempt to show that the trucks were in the required return condition by supplying "dynamometer test results, oil test results, and road test results" for the trucks prior to their return where Plaintiff rejected these results on the ground that it had concerns about the company that performed the testing. This act highlights the unfairness and inequity manifest in Plaintiff's interpretation of the Leases.

[19] *Texas E. Transmission Corp.*, 145 F.3d at 743.

the trucks and discontinued their use. This continued lease payment obligation could be extended by Plaintiff, at its sole discretion, until it determined that the trucks met the subjective "good operating condition" standard of Section 6. As in *Texas Eastern*, therefore, "the most natural and common sense reading of the contract" is the one suggested by Defendants.[20] Pursuant to the Leases, lease payments were owed only until the trucks were returned to the location designated in the Leases. It is undisputed that Defendants returned the trucks prior to the termination of the Leases. Accordingly, Defendants are entitled to summary judgment dismissing Plaintiff's claims for post-termination lease payments.

## CONCLUSION

For the foregoing reasons, the Motion is GRANTED.

New Orleans, Louisiana this 18th day of March, 2019.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[20] *Id.*

8