UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CIT BANK, N.A.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 17-10767 C/W 18-1004** |
| **HOWARD TRANSPORTATION, INC. ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendants' Motion for Partial Summary Judgment (Doc. 87); Plaintiff's Motion for Partial Summary Judgment (Doc. 93); Defendants' Motion for Discovery pursuant to Rule 56(d) (Doc. 103). For the following reasons, the Motions for Partial Summary Judgment are GRANTED IN PART, and Defendants' Motion for Discovery is DENIED.

## BACKGROUND

This consolidated action arises out of two lease agreements for tractor trailer-trucks. In the first, Hibernia National Bank (later acquired by Plaintiff CIT Bank, N.A. ("CIT")) entered into a lease with Defendant Howard Transportation, Inc. ("HT") of 50 Western Star tractor trucks (the "HT Lease").

1

Defendant Howard Industries, Inc. ("HI") guaranteed HT's indebtedness. Under the terms of the HT Lease, HT made 49 monthly lease payments, and the agreement terminated on January 15, 2017. Prior to the expiration of the lease, two of the trucks leased by HT were determined to be a total loss, and HT paid CIT the stipulated loss value of those trucks. On January 13, 2017, HT returned all remaining 48 trucks to 107 Nehi Street, Ellisville, Mississippi, the delivery location designated in the HT Lease (the "Delivery Location"). CIT picked up 46 of the trucks in November 2017 and the remaining two trucks in February 2018.

In July 2014, HT entered into a separate agreement to lease eight additional trucks from CIT. The agreement called for 49 monthly payments ending on September 1, 2018 (the "HT2 Agreement"). The lease of these trucks was covered by the provisions of the HT Lease and the HT2 Agreement. HT returned these trucks upon termination of the agreement to the Delivery Location. CIT retrieved the trucks in October 2018.

In July 2014, Defendant Howard Dedicated Operations, Inc. ("HDO") entered into a lease agreement with Capital One Equipment Finance Corp. for the lease of 15 Western Star tractor trucks ("the HDO Lease"). That agreement was later assigned to Plaintiff CIT. The HDO Lease called for 37 monthly payments and terminated on September 1, 2017. Prior to the end of the lease, HDO returned all of the trucks to the Delivery Location. CIT picked the trucks up in February 2018.

CIT brings breach of contract claims against HT, HI, and HDO (collectively "Howard"), arguing that they failed to return the trucks in the condition required by the HT Lease, the HT2 Agreement, and the HDO Lease

2

("the Leases"). CIT seeks reimbursement for the cost of necessary repairs, storage, and transportation. In its prior Motion for Partial Summary Judgment, Howard moved for a judgment dismissing CIT's claims for lease payments accruing after the termination of the Leases. This Court granted that Motion, holding that, pursuant to the Leases, lease payments were owed only until the trucks were returned to the Delivery Location and that CIT was therefore not entitled to additional lease payments.

Howard brings counterclaims against CIT alleging that it breached the Leases by failing to timely take delivery of the trucks and by charging additional rental payments. Howard also alleges that CIT committed the tort of trespass by storing its trucks after the termination of the Leases on property owned by HT without HT's permission.

There are three motions currently before the Court. First, Howard brings a second Motion for Partial Summary Judgment, seeking summary judgment on its claims for breach of contract, trespass, and the return of unlawful withdrawals. It also seeks dismissal of CIT's claim for post-termination storage and transportation costs. Second, CIT seeks partial summary judgment on its claim that Howard breached the Leases. Finally, Howard moves for additional time to conduct discovery to adequately respond to CIT's motion.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."[1] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the

---

[1] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[3] Coleman v. Hous. Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[4] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[5] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[6] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

necessary facts."[7]  Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

# LAW AND ANALYSIS

## I. Howard's Partial Motion for Summary Judgment

Howard move for summary judgment on three separate issues. First, it seeks judgment that CIT breached the Leases and committed a trespass on its property when it failed to remove its trucks from HT's facility after the termination of the Leases. Second, it seeks judgment in the amount of $93,270.02 for two unlawful debits from its account by CIT for post-termination lease payments that were not owed. Third, Howard seeks dismissal of CIT's claim for costs incurred to transport and store the trucks after the Leases had terminated.

### A. Breach of Contract and Trespass

Howard seeks a judgment that CIT breached the Leases and committed a trespass on its property when it failed to remove its trucks from HT's facility after the termination of the Leases. The HT Lease terminated on January 15, 2017. It stated that HT must provide secure storage for the trucks for 90 days after the expiration of the Lease at a location satisfactory to CIT.[9] Accordingly, HT was required to store the trucks only until April 15, 2017. It is undisputed that CIT designated 107 Nehi Street, Ellisville, Mississippi, a property owned

---

[7] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[8] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[9] Doc. 83-1.

5

by HT, as the delivery location for the trucks subject to the Leases. It is also undisputed that the trucks were returned to that location prior to the termination of the HT Lease. CIT did not, however, take possession of the trucks until November 22 through 30, 2017.[10] Howard therefore argues that it is entitled to damages for breach of contract and trespass for CIT's failure to remove the trucks from its property pursuant to the terms of the HT Lease.

Under the HDO Lease, there was no requirement that HDO store the trucks after the termination of the Leases. The HDO Lease terminated on September 1, 2017. The trucks that were the subject of the HDO Lease were not picked up from the Delivery Location until February 5 through 8, 2018. Howard therefore argues that it is entitled to damages for breach of contract and trespass for CIT's failure to remove the trucks from its property pursuant to the terms of the HDO Lease.

CIT does not dispute any of the facts set forth by Howard. However, it presents three arguments against summary judgment on these claims. First, CIT argues that Howard cannot succeed on this claim because it cannot show damages. Specifically, it argues that Howard did not incur any actual costs by storing the trucks at its facility. Howard has not, however, moved for summary judgment on the issue of damages. It asks only for judgment as to its claims for breach of contract and trespass, reserving the issue of damages to trial. CIT has cited to no law suggesting that this is not permissible.[11] Accordingly, this argument fails.

---

[10] Howard does not seek storage damages for two trucks that were not picked up until February 2018 because of mechanical issues.

[11] In fact, CIT also moves for partial summary judgment on its breach of contract claim, reserving damages for trial.

Next, CIT alleges that the trucks remained at the Delivery Location because Howard breached its obligation to return them in the condition required by the Leases, and thus they were not properly returned. It argues that it was Howard's breach, not its own, that resulted in the continued storage of the trucks on HT's property. In so arguing, CIT persists in the tortured reading of the Leases already rejected by this Court in deciding Howard's first motion for summary judgment.[12] The relevant provision of the Leases states that:

> Upon the expiration or termination of the lease term of each item of Equipment . . . , Lessee, at its own expense, will return such item of Equipment to Lessor to such location in the continental United States as Lessor may designate in writing, and in the condition required by this Section 6, and until each such item has been *so returned*, Lessee shall continue to pay Lessor, on each rent payment date during the Lease term of each such item, the rent for each full rental period for such item as specified in the Individual Leasing Record therefor. Each such item shall be returned in good operating condition with no damage thereto, normal wear and tear excepted, and at a minimum in the condition in which such item is required to be maintained pursuant to Section 6 hereof.[13]

CIT argues that the phrase "so returned" encompasses the return condition requirements of the Leases, and therefore, the Leases require the trucks to be returned to the proper location *and* in the proper condition to be "properly returned." In deciding Howard's prior motion for summary judgment, this Court held that such an interpretation would lead to absurd results.[14] The Court stated that:

---

[12] *See* doc. 66.
[13] Docs. 83-1, 83-3 (emphasis added).
[14] Doc. 66.

> Plaintiff [CIT]'s interpretation, in which Defendant [Howard] is liable for lease payments until the trucks are returned in the condition set forth in the Leases, allows Plaintiff to unilaterally extend Defendants' obligation to pay lease payments in perpetuity, pending its determination of the condition of the trucks. Such an interpretation would render the termination dates of the Leases meaningless.[15]

Here too, CIT's interpretation would allow it to store its trucks on HT's property until it determined in its sole discretion that the trucks met the condition required by the Leases. In case its prior order is unclear, this Court holds that the phrase "so returned" does not incorporate the return condition requirements of the Leases. A more sensible reading is that Howard had two independent obligations under the Leases: (1) to return the trucks at the termination of the Leases to the Delivery Location, and (2) to return the trucks at the termination of the Leases in the condition specified therein. A breach of one obligation has no bearing on the other.

It is undisputed that Howard returned the trucks to the Delivery Location as required by the Leases and that CIT failed to take possession of them within the time frame required by the Leases. If the trucks were not returned in the required condition, then Howard breached that obligation under the Leases. The condition of the trucks does not, however, have any bearing on whether they were timely returned. Accordingly, Howard's alleged breach is not to blame for CIT's failure to remove the trucks from HT's property. CIT has therefore failed to present any compelling argument against the grant of summary judgment on Howard's breach of contract claim. Howard

---

[15] *Id.*

is entitled to summary judgment that CIT breached its obligation to timely remove the trucks from HT's facility.

Finally, CIT argues that it cannot be liable for trespass because it did not put the trucks on Howard's property—Howard did. It argues it therefore lacked the requisite intent to have committed the tort of trespass. Relatedly, it argues that it cannot be liable for trespass because Howard consented to store the trucks on its property. Under Louisiana law, a trespass is an act of unlawful physical invasion of the property of another.[16] "[C]ivil trespass is generally considered to be an intentional tort, requiring proof that the defendant took some intentional action that resulted in harm to the plaintiff."[17]

Howard argues that CIT clearly had the intent to trespass when it left its trucks on HT's property for months after the Leases terminated. On the other hand, CIT argues that it lacked intent, and Howard consented to store the trucks on its property because Howard had the keys to the trucks, was responsible for parking them at its facility, continued to drive, park, and handle the trucks after the termination of the Leases, and refused to move the trucks to other facilities for testing. Accordingly, there is a material issue of fact as to whether CIT had the requisite intent to trespass or whether Howard consented to the storage of the trucks on its property after the termination of the Leases. Accordingly, summary judgment is inappropriate on Howard's trespass claim.

---

[16] Richard v. Richard, 24 So. 3d 292, 296 (La. App. 3 Cir. 2009).
[17] Terre Aux Boeufs Land Co. v. J.R. Gray Barge Co., 803 So. 2d 86, 96 (La. App. 4 Cir. 2001).

**B. Unlawful Debits**

Next, HT argues that it is entitled to an award of $93,270.02 for debits unlawfully made from its account by CIT. HT states that CIT transferred $89,5217.59 from its account for a post-termination lease payment. This Court has already held that CIT is not entitled to post-termination lease payments under the terms of the Leases.[18] Accordingly, HT argues that it is entitled to the return of this payment, plus interest. CIT has not offered any argument to the contrary. Accordingly, HT is entitled to judgment in this amount.

Next, HT argues that it is entitled to the return of $3,752.44, plus interest, that was unlawfully transferred from its account as a lease payment for two trucks that had been deemed a total loss and for which HT had already paid CIT the stipulated loss value. CIT offers no opposition. Accordingly, HT is entitled to judgment on this claim as well.

**C. Storage and Transportation Damages**

Finally, Howard moves for the dismissal of CIT's claim for transportation and storage costs. CIT brings a claim for the cost of transporting the trucks from the Delivery Location to Fort Worth, Texas and for storing the trucks thereafter. Howard argues that there is no basis in the Leases for this relief. CIT, however, cites to a section of the Leases that states that the lessee shall be liable for "all costs and expenses" incurred by CIT as a result of a breach. Further, the HT2 Agreement and HDO Lease contain Maintenance and Return Riders that expressly state that if the lessee fails to return the trucks in the condition required by the Leases, it will be responsible for the "costs of all repairs, alterations, inspections, appraisals, storage charges, insurance costs,

---

[18] Doc. 66.

and other related costs necessary to place the Equipment in such condition as to be in complete compliance with the Return Conditions."[19] Accordingly, the Leases expressly allow for the damages sought, and summary judgment dismissing CIT's claims for storage and transportation costs would therefore be inappropriate.

## II.   CIT's Partial Motion for Summary Judgment

CIT moves for summary judgment on its claim that Howard breached the Leases in four ways: (1) by failing to return the trucks in the condition required in the HT Lease; (2) by failing to perform certain testing on the trucks prior to the termination of the HT Lease; (3) by failing to maintain and timely provide CIT with maintenance records on the trucks; and (4) by failing to provide test results that were reasonably acceptable to CIT pursuant to the H2 Agreement and HDO Lease.

At the outset, Howard argues that CIT's motion should be denied because it is supported by unauthenticated and inadmissible evidence.[20] Howard complains that CIT's motion is supported only by "non-affidavit, non-deposition, documentary hearsay evidence" and that much of the evidence is unauthenticated. Federal Rule of Civil Procedure 56(c), however, clearly states that a party may only object to evidence used to support a summary judgment motion if such evidence "cannot be presented in a form that would be admissible in evidence" at trial.[21] Howard offers no reason that CIT's evidence,

---

[19] Docs. 83-1, 83-3.
[20] In reviewing Howard's opposition, the Court feels compelled to direct Howard to Local Rule 10.1 providing the margin requirements for all documents filed with this Court. Howard should familiarize itself with these rules prior to future filings.
[21] FED. R. CIV. P. 56.

which consists primarily of contracts, receipts, work orders, reports, emails, and letters, "is not capable of being admitted at an eventual trial."[22] Indeed, Howard offers no argument that these items are not authentic or that they cannot fit within a hearsay exception. Accordingly, this argument fails.

### A. Breach of Return Condition

First, CIT moves for summary judgment that HT breached the HT Lease by failing to return the trucks in the condition required therein.[23] It argues that the fact that HT voluntarily performed repairs on the trucks after the termination of the Lease is conclusive evidence that the trucks were not in acceptable condition at the time that the Lease terminated on January 15, 2017.

In a remarkable change of tune, HT rebuts that the proper time period for considering the condition of the trucks should be when they were picked up by CIT in November 2017 and February 2018. This is an abrupt abandonment of its prior argument that it returned the trucks when they were parked at the Delivery Location at the termination of the Lease. In its own motion discussed above, HT argued that it returned the trucks prior to the termination of the Lease and that CIT was in breach for failing to timely take possession of the trucks. In addition, in its prior motion it argued that it returned the trucks prior to the termination of the Leases and was therefore not obligated to continue making lease payments.[24] Here, HT argues that the trucks were not "returned" until they were picked up by CIT and therefore the condition of the

---

[22] Maurer v. Indep. Town, 870 F.3d 380, 384 (5th Cir. 2017) (considering unsigned contract at summary judgment stage).
[23] CIT does not move for summary judgment regarding the return condition of the trucks leased pursuant to the HDO Lease or HT2 Agreement.
[24] Doc. 36.

12

trucks at the time that they were picked up is the relevant consideration. HT offers no logical justification for these irreconcilable positions.

The HT Lease clearly states that:

> [U]pon the expiration or termination of the lease term of each item of Equipment . . . , Lessee, at its own expense, will return such item of Equipment. . . in the condition required by this Section 6 . . . . Each such item shall be returned in good operating condition with no damage thereto, normal wear and tear excepted, and at a minimum in the condition in which such item is required to be maintained pursuant to Section 6 hereof.

Accordingly, the trucks were required to be in "good operating condition" at the time the Lease expired. The Equipment Addendum to the HT Lease sets out the specific requirements for the return of the trucks, including, for example, that: (1) there is no structural or mechanical damage; (2) the engines operate at a minimum of 80% of the manufacturer's rated horsepower as verified by a chassis dynamometer test; and (3) the engines have no oil or coolant leaks. CIT argues that the trucks were clearly not in the required condition for return because HT performed repairs after the Lease terminated. For example, CIT shows that between the expiration of the Lease on January 15, 2017 and the date the trucks were picked up by CIT in November 2017, HT performed several repairs on various trucks including replacing a turbo actuator, replacing a fuel pump, and repairing "catastrophic engine damage." It is undisputed that two trucks required repairs that prevented them from being moved from the Delivery Location in November 2017 with the rest of the

trucks. Further, CIT provides a report from testing performed in July 2017 in which a representative of HT noted that 25 of the 48 trucks were leaking oil.

HT does not provide any facts or argument disputing that these repairs occurred. Instead, it persists in its position that the trucks were in the return condition required by the Lease when they were picked up by CIT in November 2017. This Court has already rejected this argument. Accordingly, HT has not created an issue of material fact regarding the repairs performed on the trucks after the expiration of the HT Lease. Therefore, CIT has shown that at least some of the trucks were not in the condition required by the Lease at the time the Lease terminated.

HT next argues that summary judgment is inappropriate because CIT has only identified repairs made after the termination of the Lease on a handful of the 48 trucks at issue. It argues that CIT should present evidence as to the condition of each truck. Such evidence, however, would serve only to prove damages. If HT returned even one truck in a condition that does not meet the requirements of the Lease, then it has breached its obligations therein. Summary judgment is appropriate where CIT has shown that HT breached its obligation to return all of the trucks in the condition required by the HT Lease.

Finally, HT argues that summary judgment on this issue is premature because discovery is ongoing. Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may defer consideration of the motion or allow the nonmovant additional time for discovery. "To justify a continuance, the Rule 56(d) motion must demonstrate (1) why the movant needs additional discovery; and (2) how the

additional discovery will likely create a genuine issue of material fact."[25] The Rule 56(d) movant "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."[26] HT has not pointed to any evidence that it might glean from additional discovery that would create a genuine dispute of material fact regarding its post-termination repairs of the trucks. Accordingly, Howard's Rule 56(d) Motion is denied, and summary judgment is granted as to CIT's claim for breach of the obligation in the HT Lease to return the trucks in the condition required therein.

**B. Failure to Maintain Records**

CIT next argues that HT breached the HT Lease by failing to timely maintain and produce maintenance records for the trucks at the termination of the Lease. The HT Lease requires that records of maintenance and service be maintained and provided to CIT "upon request during the term of the Lease or at Lease Termination."[27] CIT argues that it first requested copies of the maintenance records on January 19, 2017 but that it did not receive them until February 24, 2017. It argues that the records were incomplete when it received them, evidencing HT's failure to properly maintain the records as required by the Lease.

HT, on the other hand, presents evidence that when CIT initially requested the records on January 19, 2017, it asked that they be placed in the cab of each truck to be available to its inspector. HT contends that it timely

---

[25] Weaver v. Harris, 486 F. App'x 503, 505 (5th Cir. 2012).
[26] McKay v. Novartis Pharm. Corp., 751 F.3d 694, 700 (5th Cir. 2014).
[27] Doc. 83-1.

15

complied with this request, but CIT did not send its inspected and later requested on February 24, 2017 that the records be overnighted. Accordingly, there is material issue of fact regarding CIT's claim that HT breached its obligation to maintain and timely provide maintenance records. Summary judgment is denied.

### C. Breach of HT Lease Testing Requirements

CIT next argues that HT breached the HT Lease's requirements to test and inspect the trucks prior to their return. The Equipment Addendum to the HT Lease requires that "[n]ot more than ten (10) days prior to redelivery Lessee shall perform an engine diagnostic test with respect to each item of Equipment" and make any necessary repairs.[28] It further required that "prior to any return of the Equipment, an in-depth physical inspection will be conducted by a manufacturer's service representative." CIT argues that HT breached this obligation because it did not perform any testing or inspection on the trucks until April 2017, three months after the termination of the Lease. HT offers no facts contradicting this, and there is no evidence in the record showing that any testing or inspection of the trucks was performed prior to the January 15, 2017 termination of the HT Lease.[29] Accordingly, CIT is entitled

---

[28] *Id.* at p.19.
[29] Evidence that HT had the trucks inspected or tested prior to the termination of the Lease would necessarily be in HT's possession. Accordingly, additional discovery on this issue would not create a genuine issue of material fact.

to summary judgment on its claim that HT breached its obligation under the HT Lease to test and inspect the trucks prior to their return.

### D. Breach of HDO Lease and HT2 Agreement

Finally, CIT argues that Howard breached a similar requirement under the HDO Lease and HT2 Agreement. Both the HDO Lease and the HT2 Agreement incorporate identical Maintenance and Return Riders requiring that each truck "shall have passed a road test and oil analysis each conducted not more than sixty (60) days prior to the return of the Equipment . . . and the test and test results shall have been reasonably acceptable to Lessor."[30] CIT argues that although Howard timely tested the trucks subject to the HDO Lease and HT2 Agreement, the tests and test results were not "reasonably acceptable" to it.

Howard employed Burroughs Diesel to test the HDO and HT2 trucks prior to the expiration of the Leases. CIT argues that Howard was well aware of "CIT's mistrust of Burroughs Diesel, its methods, and its equipment."[31] Despite CIT's objection, however, Howard insisted on the use of Burroughs Diesel to perform the required testing and refused to engage a different testing facility at CIT's request. CIT argues that it was entitled under the terms of the agreements to reject Howard's test results and request the use of a different testing facility that would be "reasonably acceptable" to it. Because Howard failed to comply with this request, CIT argues that Howard breached its obligation to provide it with testing and test results that are "reasonably acceptable" to it. Howard rebuts that resolution of this claim requires

---

[30] Doc. 83-3, p. 31.
[31] Doc. 112.

consideration of CIT's reasonableness and Burroughs Diesel's credibility and is inappropriate for summary judgment.

The phrase "reasonably acceptable" imposes on CIT the duty to make "a good-faith judgment on a reasonable basis" whether the tests and results are reasonable.[32] The Court finds that whether CIT's decision to reject Burroughs Diesel's testing was made on a good-faith, reasonable basis is an issue of fact for the jury.[33] This Court agrees with Howard that resolution of this claim requires a determination of CIT's reasonableness and Burroughs Diesel's credibility and is inappropriate for summary judgment.

## **CONCLUSION**

For the foregoing reasons, Howard's Partial Motion for Summary Judgment is GRANTED IN PART; CIT's Partial Motion for Summary Judgment is GRANTED IN PART; and Howard's 56(d) Motion is DENIED.

HT is entitled to summary judgment on its claim for reimbursement of $93,270.02 plus legal interest. HT and HDO are entitled to summary judgment on their breach of contract claim for CIT's failure to remove its trucks from the Delivery Location pursuant to the HT and HDO Leases.

CIT is entitled to summary judgment on its claim against HT for breach of the obligations in the HT Lease to (1) return the trucks in the condition required therein and (2) test and inspect the trucks prior to their return.

All other requests for summary judgment are DENIED.

---

[32] Team Contractors, LLC v. Waypoint Nola, LLC, No. CV 16-1131, 2019 WL 1275327, at *4 (E.D. La. Mar. 20, 2019) (J. Morgan).

[33] *Id.* (interpreting a contract stating, "[A]s a prerequisite to final payment, the Contractor shall submit (i) a release in form reasonably acceptable to the Owner . . . .").

New Orleans, Louisiana this 13th day of January, 2020.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**